UNION TRUST CO. OF PITTSBURGH (FIRST NATIONAL BANK OF BOSTON, et al., Interveners) v. BOARD OF EDUCATION OF CITY OF CHICAGO et al.

No. 15263.

District Court, N. D. Illinois, E. D.
July 13, 1937.

Gardner, Morrow, Fowler & Merrick, Arthur A. Sullivan, and Howard B. Bryant, all of Chicago, Ill., Leonard C. Mead, of Geneva, Ill., and Henry O. Nickel, of Chicago, Ill., for plaintiff.

Richard S. Folsom and Barnet Hodes, Corporation Counsel, both of Chicago, for defendants.

SULLIVAN, District Judge.

### Findings of Fact

This cause having come on to be heard, the Court, from the allegations and admissions of fact contained in the pleadings and made in open court, by counsel for the respective parties, and after having heard the arguments of counsel and being fully advised in the premises, now finds the following facts, to-wit:

1. Plaintiff, The Union Trust Company of Pittsburgh, is a corporation organized and existing under and by virtue of the laws of the State of Pennsylvania, and doing business in the City of Pittsburgh, Pennsylvania, and is and has been at all times a citizen of the State of Pennsylvania, in the United States of America.

2. Intervener and co-plaintiff, First Service Corporation, is a corporation organized and existing under and by virtue of the laws of the State of Minnesota, and is, and has been at all times, a citizen of the State of Minnesota, in the United States of America.

3. Intervener and co-plaintiff, Marie L. Reuther, is, and has been for some time past, a citizen of the State of Louisiana, in the United States of America.

4. Intervener and co-plaintiff, The First National Bank of Boston, is a corporation organized under the laws of the United

States of America, and is engaged in the business of banking in the City of Boston, in the State of Massachusetts, and is and has been at all times a citizen of the State of Massachusetts in the United States of America.

5. Intervener and co-plaintiff, The Chase National Bank, is a corporation organized under the laws of the United States of America, and is engaged in the business of banking in the City of New York, in the State of New York, and is, and has been at all times, a citizen of the State of New York, in the United States of America.

6. That the claim of each of the above named parties, plaintiff and co-plaintiffs, and the matter in controversy in this cause, respecting each of them, exceeds, exclusive of all interest and costs, the sum of Three Thousand Dollars ($3000), and that this action involves a controversy between citizens of different states of the United States.

7. Defendant, City of Chicago, is a municipal corporation organized and existing under and by virtue of the laws of the State of Illinois, and is a body politic and corporate, and is a city having a population in excess of 500,000 inhabitants, and constitutes and comprises one entire school district, which school district, and system of free schools therein, is in charge of and governed by a board of education known as the Board of Education of the City of Chicago, one of the defendants herein, under and pursuant to the provisions of the statute of the State of Illinois.

8. Defendant, Edward J. Kelly, is the duly elected and acting Mayor of the City of Chicago; that defendant, Gustave A. Brand, is the duly elected and acting Treasurer of the City of Chicago, and as such is ex-officio Treasurer of the Board of Education of the City of Chicago; and that defendant, Robert B. Upham, is the duly elected and acting Comptroller of the City of Chicago.

9. Defendant, Board of Education of the City of Chicago, is, pursuant to the laws of the State of Illinois, a body politic and corporate, and, as such, has charge, supervision, control, maintenance and government of the system of free schools in and for the school district comprising the entire City of Chicago.

10. Defendant, James B. McCahey, is the duly appointed and acting President of the said Board of Education of the City of Chicago.

11. That on January 21, 1929, there was duly passed by the City Council of the City of Chicago, and approved by the Mayor of said city, a tax levy ordinance for the year 1929, which became effective and in full force from and after the date of its passage and approval, in the total amount of $177,021,250, being the total of appropriations for the current fiscal year of 1929 of the said City for all corporate purposes, including school purposes of said City and other purposes designated in said ordinance; and that there was included in this levy, under and by virtue of said ordinance, specific levies for school purposes as follows:

| | |
|---|---|
| For Educational purposes | $56,160,000.00 |
| And for estimated loss and costs of collection thereof | 6,240,000.00 |
| For Building purposes and the purchase of school grounds | 29,250,000.00 |
| And for estimated loss and costs of collection thereof | 3,250,000.00 |

12. That the Fifty-sixth General Assembly of the State of Illinois enacted a Bill amending Section 189 of "An Act to establish and maintain a system of free schools," approved and in force June 12, 1909, as amended, Laws 1929, p. 705, § 1, increasing the rate that the defendant, Board of Education of the City of Chicago, and the City Council of the City of Chicago were permitted to levy for educational purposes for the year 1929; that the City Council of the City of Chicago thereafter, on the 10th day of July, 1929, upon the request of the defendant, Board of Education of the City of Chicago, levied an additional tax for educational purposes for the year 1929 in the amount of $21,400,000, and levied an additional tax for building purposes in the amount of $5,313,000, thereby making the total tax levied by the City Council of the City of Chicago upon the request and demand of the defendant, Board of Education of the City of Chicago,

for educational purposes for the year 1929, the sum of $83,800,000; and the total tax levied by the City Council of the City of Chicago for building purposes for the year 1929 the sum of $37,813,000.

That during the year 1928 the State Tax Commission of the State of Illinois ordered a reassessment of all the taxable real property in the County of Cook, and that by reason of the delay in the making of said reassessment it was impossible to, and the taxing agents of the County of Cook did not, extend taxes levied by the City Council of the City of Chicago, as aforesaid, until over two years after said reassessment was so ordered, and that no taxes were extended in Cook County during said period; *that when such reassessment, so ordered by the State Tax Commission, was completed,* the value of the assessed taxable property in said Cook County was greatly reduced, and the taxes which had been previously levied for educational and building purposes were extended by the taxing authorities in the following amounts, to-wit:

| | |
|---|---|
| For Educational Purposes | $54,386,937.12 |
| Less Reservation for loss and costs of collection | 5,438,693.71 |
| Net Receivables | $48,948,243.41 |
| For Building Purposes | $18,472,493.53 |
| Less Reservation for loss and costs of collection | 1,847,249.35 |
| Net Receivables | $16,625,244.18 |

13. That pursuant to a resolution of the said Board of Education of the City of Chicago, duly passed, the City Council of the City of Chicago did, on to-wit, January 21, 1929, in accordance with the law and the statutes of the State of Illinois, pass an ordinance authorizing the Mayor and Comptroller of the said City of Chicago, upon the request of the said Board of Education, to issue warrants against and in anticipation of the educational tax levied by the City Council of the said City of Chicago for payment of the ordinary and necessary expenses chargeable against said school educational taxes of the public schools of said city for the year 1929 to the extent of seventy-five per cent of the total amount of said educational tax levy; that pursuant to a resolution of the Board of Education of the City of Chicago, duly passed, the City Council of the City of Chicago did, on the same day and year aforesaid, pass a like and similar ordinance as that mentioned above respecting the issuance and disposition of warrants drawn against and in anticipation of the school building tax levied by the City Council of the said City of Chicago for payment of the ordinary and necessary expenses chargeable against the school building taxes of the public schools of said city for the year 1929, to the extent of seventy-five per cent of the total amount of said school building tax levy; and that both of said ordinances provided that such warrants should be issued only in conformity with Section 132 of an act of the General Assembly of the State of Illinois, entitled "AN ACT to amend sections 128 to 139, inclusive, and section 161 of an Act entitled 'An Act to establish and maintain a system of free schools,' approved and in force June 12, 1909; and to provide a method of proving records, rules, resolutions, and ordinances of the boards of education in cities having a population exceeding 100,000 inhabitants," approved and in force on April 20, 1917. Laws 1917, p. 724.

14. That pursuant to the aforesaid ordinances, and upon the request of the Board of Education of the City of Chicago, there were issued and sold to the public, and others, tax warrants drawn against and in anticipation of the said taxes levied for the year 1929 for educational purposes, to provide a fund to meet and defray the ordinary and necessary expenses of the public schools of the City of Chicago, as aforesaid, in the aggregate amount of $46,800,000; and for school building purposes, to provide a fund to meet and defray the ordinary and necessary expenses of the public schools of the City of Chicago for said purpose, as aforesaid, in the aggregate amount of $15,900,000.

15. That said warrants so issued and sold, as aforesaid, each bore a number, those issued for educational purposes bearing the letter "E" before the numeral, and those for building purposes the letter "B" before the numeral; that each of said war-

rants provided that the City of Chicago "will pay to the bearer", on a date certain named therein, at the office of the Treasurer of the City of Chicago, or at the option of the holder, the sum of money named in said warrant, with interest thereon at the rate of six per cent (6%) per annum "from date until paid;" that the principal and interest would be paid in lawful money of the United States "from the proceeds of taxes, when received, heretofore levied upon all the taxable property in the City of Chicago for the year 1929" for educational or building purposes, according to whether it was an "E" or "B" warrant. Each of said warrants further provided that it was issued "in anticipation of taxes so levied for the year 1929" for building or educational purposes, according to whether the warrant was an "E" or a "B" warrant, "to provide a fund to meet and defray the necessary and ordinary expenses of the public schools of the City of Chicago, and is payable, both principal and interest, solely from said taxes when collected, and not otherwise, which taxes are hereby assigned and pledged to the payment of this warrant and all warrants issued against and in anticipation of said taxes, the total of which warrants so issued does not exceed seventy-five per cent of the tax levy made therefor, and shall be received by any collector of taxes in payment of the taxes against which it is issued." Each of said warrants also certified "that all acts, conditions and things required by law to be done and precedent to and in the issuance thereof have been properly done, have happened and have been performed, as authorized by an act of the Legislature of the State of Illinois particularly described in said warrant and relating to boards of education in cities having a population exceeding 100,000 inhabitants, in force April 20, 1917, as amended, and by all other laws thereunto enabling." Each of said warrants was signed by the Board of Education of the City of Chicago, by its then President and Secretary, and by the City of Chicago, by its then Mayor and Comptroller; that all of said warrants, both educational and building, were of like form and language, and contained the same provisions, except that said warrants were in various amounts, had different numbers, various dates of issuance, and various dates of maturity; and the "E" warrants were issued against taxes levied for educational purposes and "B" warrants against taxes levied for building purposes. In all other respects all of said warrants were identical in form and content. A photostatic copy of one of said Building Warrants is attached to the Complaint herein, marked "Exhibit A," and made a part thereof; also a photostatic copy of one of said Educational Warrants is attached to the Complaint herein, and marked "Exhibit B," and made a part thereof. And it was agreed that all of the other warrants issued and sold by the Board of Education in anticipation of said taxes levied for the year 1929 have identical provisions with Exhibits "A" and "B" attached to the Complaint, with the exceptions above mentioned.

Said warrants were issued in compliance with Section 132 of an act entitled "An Act to amend sections 128 to 139, inclusive, and section 161 of an Act entitled 'An Act to establish and maintain a system of free schools,' approved and in force June 12, 1909, and to provide a method of proving the records, rules, resolutions, and ordinances of boards of education in cities having a population exceeding 100,000 inhabitants," approved and in force April 20, 1917, as subsequently amended.

16. The said Building Warrants, so issued and sold, as above found, were numbered B-1 to B-5556, inclusive; and those numbered from B-1 to B-4945, inclusive, have been paid in full with accrued interest, except those that were turned in in the payment of taxes at their face value and accrued interest and thereby canceled.

17. The said Educational Warrants first issued and sold were numbered E-1 to E-55, inclusive, and were sold to the City of Chicago, the city paying for the same with funds in the hands of the City Treasurer which had been set aside for some particular purpose, but which funds at the time were not then immediately necessary for use for said purpose. Said warrants so sold bore interest at the rate of four per cent per annum and were issued on the following dates, to-wit:

E–1 to E–7, inclusive, January 25, 1929;
E–8 to E–14, inclusive, February 8, 1929;
E–15, ............... February 13, 1929;
E–16 to E–19, inclusive, February 16, 1929;
E–20 to E–37, inclusive, February 8, 1929;
E–38 to E–49, inclusive, March 8, 1929;
E–50, ................ March 15, 1929;
E–51, ................ March 15, 1929;
E–52 to E–53, ........ March 8, 1929;
E–54, ............... March 15, 1929;
E–55, ............... March 15, 1929.

These warrants bore no so-called maturity date, and, at various dates after their purchase, were sold by the City of Chicago, with a rider attached thereto increasing the interest rate thereof to six per cent per annum. All of these warrants were afterwards paid and canceled within the period from May 4, 1931, to May 26, 1931.

Beginning with April 1, 1929, an additional amount of said warrants was issued and sold. These were numbered from E-1 to E-5798. E-1 to E-1010 of this so-called series bore date April 1, 1929, and E-1011 to E-5798 bore date of July 1, 1929. Later a number of these warrants of this so-called series of the larger denominations were turned in and canceled and new warrants in smaller denominations in lieu thereof were issued. The warrants issued in lieu of those turned in and canceled were numbered E-5799 to E-6118, inclusive, and bore date of April 1, 1929. The said warrants so returned and canceled (and for which the said new warrants were issued) were numbered E-540 to E-566, inclusive; E-821 to E-828, inclusive; E-832 and E-833; all bore the date of April 1, 1929; and the said educational warrants so issued in lieu thereof also bore the same date of issue. The said warrants so turned in and canceled all bore the so-called maturity date of July 15, 1930, except those numbered E-21 to E-28, inclusive, and E-832 and E-833, which bore a so-called maturity date of August 15, 1930. The said warrants issued in lieu thereof up to and including E-5998 bore the so-called maturity date of July 15, 1930, and the remainder of said warrants, E-5999 to E-6118, inclusive, the date of August 15, 1930. All of the said so-called series of warrants from E-1 to E-2904 have been paid in full, with accrued interest, except those that were turned in in payment of taxes, and those that were turned in and canceled and for which new warrants were issued in lieu thereof, as above found Said warrants that were issued in lieu of lower numbered and larger denominations, as aforesaid, and numbered E-5999 to E-6118, inclusive, have also been paid in full with accrued interest, except those that were turned in in payment of taxes and thereby canceled; that the so-called second series of Educational Warrants, numbered E-1 to E-55, inclusive, were paid in full from time to time during the period from May, 1931, to September 15, 1931; thus there were outstanding and unpaid from April 1, 1929, to May, 1931, two sets or so-called series of Educational Warrants, each numbered from E-1 to E-55, inclusive, in the hands of different owners.

18. No interest has been paid up to the time of the hearing of this cause upon any of said Building or Educational Warrants still outstanding, unpaid and unredeemed.

19. The taxes for the year 1929 became delinquent May 15, 1931; and all warrants, both Educational and Building, were issued and sold before the taxes for the year 1929 had been extended by the County Clerk; that the latest so-called maturity date fixed in any of the Educational Warrants was October 15, 1930, and the latest so-called maturity date fixed in any of the Building Warrants was September 15, 1930; that all of the said warrants, considering their so-called maturity date, were past due before the 1929 taxes were put in collection; that this was occasioned in a measure by a re-assessment of the real estate in Cook County ordered by the State Tax Commission, as aforesaid, and in consequence some two or more years' interest had accrued on said warrants before any collection of the 1929 taxes was started. The first collection of any taxes under the 1929 tax levy began coming in only in May, 1931.

20. The Complaint and respective Bills of Intervention set forth the amount and kind of warrants and their numbers, held and owned by the original plaintiff, The Union Trust Company of Pittsburgh, and the respective co-plaintiffs and interveners,

namely, The First National Bank of Boston, The Chase National Bank, First Service Corporation, and Marie L. Reuther. The answers of the defendants neither admit nor deny said ownership, but it was agreed on the hearing of this cause, between counsel for the respective parties, that, for the purpose of this hearing, no formal proof need be made by the respective parties plaintiff of their ownership of the warrants set forth in the Complaint and respective Bills of Intervention, subject, in case an accounting should be decreed, in accordance with the prayer of the complaint, that the said warrants be produced on such accounting and hearing, and that proof be made as to the ownership —counsel for defendants stating that there was no doubt but that the ownership was as alleged, and that the hearing might proceed on such assumption of ownership by the respective parties plaintiff, as alleged in the Complaint and the respective Bills of Intervention.

21. That of the total amount of warrants issued and sold, Educational Warrants to the amount of approximately $39,-696,000, and Building Warrants to the approximate amount of $12,998,000, inclusive of those turned in and received in the payment of taxes, have been called, paid, redeemed or canceled for taxes, up to and including June 30, 1936, out of the proceeds of the collection of the 1929 tax levy for said respective purposes; and that on the aforesaid date there still remained outstanding, unpaid, unredeemed and uncanceled, the approximate aggregate amount of $7,104,000 of said Educational Warrants, and approximately $2,902,000 of said Building Warrants, and that among those so outstanding and unpaid are the warrants, both Educational and Building, owned by the plaintiff and respective co-plaintiffs and interveners.

22. None of the aforesaid outstanding and unpaid Educational or Building Warrants have been paid since on or about July 7, 1935, when a certain suit by another holder of a certain block of said warrants was instituted in this court against the defendants herein, seeking like relief as that prayed for in the Complaint in this action; that at the time of the institution of the aforesaid suit on or about July 7, 1935, there was in the hands of the City Treasurer, ex-officio Treasurer of the Board of Education of the City of Chicago, a considerable sum of money in both the Educational and Building funds derived from the collection of taxes levied for the year 1929 for said respective purposes, as above found, which respective funds have since been augmented by the additional collection of taxes so levied, so that on or about September 15, 1936, there was in the hands of the said City Treasurer, ex-officio School Treasurer, in the Educational fund available for Educational Warrants the approximate sum of $1,099,696.49, and in the Building fund available for Building Warrants the approximate sum of $362,615.21; that there has been collected approximately $44,626,439 from taxes levied for the year 1929 for Educational purposes, including warrants used in the payment of taxes, up to December 15, 1935, and approximately $15,157,345 from taxes levied for the year 1929 for building purposes, including warrants used in the payment of taxes.

23. That all of said Educational and Building warrants which have been turned in in payment of taxes and thereby canceled, have been accepted by the County Treasurer in payment of taxes to the full amount of the face value thereof, together with accrued interest at the rate of six per cent per annum up to the time of the acceptance by the said County Treasurer of said warrants in payment of taxes; and that all of said warrants which have been paid in cash and redeemed and canceled from time to time have been paid in full with accrued interest at the rate specified therein up to the time fixed in the call for payment thereof.

24. That taxes levied in 1929 for Educational and Building purposes, respectively, still outstanding and uncollected will not be sufficient, even if collected in full, to pay said respective outstanding and unpaid Educational and Building warrants with accrued interest thereon.

25. That the so-called maturity date appearing on the various warrants, both Educational and Building, was determined and fixed by the issuing authorities upon the

basis of an estimate of the amount of taxes which would be collected in a sufficient amount to meet all warrants bearing the particular maturity date so fixed.

26. No order, resolution or ordinance was passed by the Board of Education of the City of Chicago, or by the City Council of said city, at any time, requiring that warrants be numbered in the order of their issuance or that they be called or paid in their numerical order, or relating thereto, regulating or governing the manner or order in which said warrants should be numbered, called or paid.

27. None of the defendants has ever at any time, directly or indirectly, expressly or impliedly, disclaimed or repudiated their duties to the holders of the said warrants in question, to receive, hold and disburse the taxes collected upon said Educational and Building levies for the benefit of all the said holders, as their interests appear, in accordance with the provision of said warrants and the provisions of all pertinent and relevant statutes and laws of the State of Illinois, pursuant to which said warrants were issued and sold by the said defendant.

28. The books and records of the defendants showing the transactions relating to the warrants here involved are necessarily voluminous, complicated and intricate, and could not be presented and examined in a court of law in such manner as to arrive at a satisfactory conclusion as to the amount due from the defendants to the respective plaintiffs.

Upon the foregoing Findings of Fact the Court states the following as its

### Conclusions of Law

■ 1. That the court has jurisdiction of the subject matter and of the parties to this cause, and that said cause is properly cognizable in a court of equity.

■ 2. That the tax anticipation warrants held by the plaintiff and respective co-plaintiffs and interveners constitute contracts between each of said respective parties and the said defendants, the City of Chicago and said Board of Education of the City of Chicago, the terms and conditions of which could not be altered, modi-

fied or impaired by legislation subsequent to the issue and sale of said warrants.

■ 3. That all pertinent and relevant statutes of the State of Illinois in effect at the time of the issuance and sale of said warrants, and pursuant to which said warrants were issued and sold, and all ordinances of the City of Chicago and resolutions of the Board of Education of the City of Chicago, providing for and pursuant to which said warrants were issued and sold, entered into and constituted a part of said contracts between said respective plaintiffs and said defendants, the City of Chicago and Board of Education of the City of Chicago.

■ 4. That any so-called practice, usage or custom of the City of Chicago, or of the Board of Education of the City of Chicago, of calling and paying said warrants in their numerical order, was and is contrary to and in conflict with the aforesaid contracts between the respective plaintiffs and the said City of Chicago and Board of Education of the City of Chicago, and no such alleged practice, usage or custom could or did enter into, vary, modify, change or supplement said contracts.

■ 5. That the rights and interests of the parties to this cause are governed and must be determined solely and only by the provisions of the aforesaid warrants and relevant and pertinent statutes in force at the time same were issued and sold, without regard to any so-called alleged practice, usage or custom of the City of Chicago or of the Board of Education of the City of Chicago relating to the calling and payment of said warrants.

■ 6. That said warrants held by the respective plaintiffs, and all other warrants issued in anticipation of the taxes levied for educational and building purposes for the year 1929, are payable out of the proceeds of taxes so levied, when collected and received by the City of Chicago and the said Board of Education of the City of Chicago, and not otherwise.

■ 7. That said warrants do not constitute general obligations of the defendants, City of Chicago or Board of Education of the City of Chicago, but are paya-

ble out of the proceeds of taxes levied and collected, as aforesaid, and from no other source; that said defendants were without authority to increase or replenish said Educational and Building funds from which said warrants are payable, should the same prove insufficient to pay in full all warrants issued against said respective funds.

8. That all the taxes levied for educational and building purposes for the year 1929 were required, by the provisions of the statute, to be set apart for the payment, respectively, of all warrants issued against said educational and building levies, and each warrant constituted an express assignment and pledge of all taxes of the respective levy against which such warrant was issued, for the payment thereof and the payment of all other warrants issued against such levy.

9. That defendants, City of Chicago and Board of Education of the City of Chicago, when taxes were received by them as proceeds of such educational and building levies, became, were and are trustees of said proceeds, holding the same for the payment of the respective warrants issued against said levies, and it became the duty of said defendants to disburse said proceeds so held by them in the payment of all warrants issued against said respective levies and accrued interest thereon, and for no other purpose.

10. That none of said warrants was or is entitled to any priority, preference or advantage as to the respective levy against which the warrant was issued, over any other warrant or warrants issued against such levy, but each of said warrants was and is entitled to share equally and ratably in all taxes collected or received by the City of Chicago and Board of Education of the City of Chicago as the proceeds of the respective levy against which said warrant was issued.

11. That the plaintiff is entitled to the injunctive relief prayed against the City of Chicago and Board of Education of the City of Chicago, and other officers and agents, restraining the further payment of said warrants outstanding and unpaid, except upon a pro rata basis, and without priority or preference.

12. That the plaintiff, and each of the co-plaintiffs and interveners, is entitled to an accounting from the said City of Chicago and Board of Education of the City of Chicago of and for all taxes heretofore at any time collected and received by them as the proceeds of said educational and building tax levies for the year 1929, and against which said warrants owned and held by said respective parties were issued.

13. That each of the plaintiffs is entitled to recover of and from the defendants, City of Chicago and Board of Education of the City of Chicago, their respective pro rata share of the taxes at any time collected and received by the said defendants as the proceeds of the collection of said 1929 tax levies for educational and building purposes, respectively, the pro rata share of each of said plaintiffs being the proportion that the total amount of warrants, either educational or building, held and owned by such plaintiff bears to the total amount of said warrants issued against said respective levies.

14. That none of the plaintiffs has waived, forfeited or lost, by laches or otherwise, any of their rights herein to which they, or any of them, are entitled under the warrants held by them and under the law.

15. That this cause should be referred to a master in chancery to take and state the account as to each plaintiff, in conformity with the foregoing Conclusions, as a basis for a final decree in accordance therewith.